(83 South. 324)

DOWDA v. STATE. (6 Div. 925.)

(Supreme Court of Alabama. Oct. 30, 1919.)

1. STATUTES ⚫114(6)—SUBJECT OF BONE-DRY LAW GERMANE TO TITLE.

The Shaw Bill, or Bone-Dry Law, of January 25, 1919, providing by section 12 for the abatement of liquor nuisances and the destruction of property used in creating or maintaining them, held not violative of Const. § 45, as not germane or properly referable to the title of the act, which is, "To further suppress the evils of intemperance," etc.

2. JURY ⚫19(15)—PROVISION FOR ABATEMENT OF LIQUOR NUISANCE NOT VIOLATIVE OF GUARANTY OF RIGHT TO JURY TRIAL.

The Shaw Bill, or Bone-Dry Law, of January 25, 1919, providing by section 12 for the abatement of liquor nuisances and the destruction of the property used in creating or maintaining them, held not violative of the provision of the Constitution guaranteeing to citizens the inalienable right of trial by jury; the right not having existed in such a proceeding at common law or by statute when the Constitution was adopted.

3. CONSTITUTIONAL LAW ⚫239, 295—INTOXICATING LIQUORS ⚫21—ABATEMENT ACT NOT A DENIAL OF DUE PROCESS OR EQUAL PROTECTION OF LAW.

The Shaw Bill, or Bone-Dry Law, of January 25, 1919, providing by section 12 for the abatement of liquor nuisances and the destruction of property used in creating or maintaining them, held not violative of the state or federal constitutional provisions as to due process of law or the equal protection of the law, since it provides for notice to owners or claimants, affords opportunity to be heard, and provides for judicial determination of forfeiture.

4. INTOXICATING LIQUORS ⚫6, 21—LEGISLATURE HAS POWER TO DECLARE PLACE OF SALE A COMMON NUISANCE.

The Legislature has power to regulate or absolutely prohibit the manufacture or sale, or other disposition, of intoxicating liquors within the state, and may declare a place kept or maintained for such a purpose to be a common nuisance, such action not being invalid as a legislative attempt to enforce a criminal law by

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

civil action, as the state police power extends to searches and seizures, and to destruction of property which is the subject of a crime, or the means of perpetrating it.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Joseph R. Tate, as solicitor of the Tenth Judicial Circuit of the State, against B. B. Dowda, to condemn property because of manufacture of prohibited liquors thereon. From decree overruling demurrer to the bill, respondent appeals. Affirmed.

The style of the bill is the State of Alabama v. One House and Two Lots and B. B. Dowda, and it is brought by Joseph R. Tate, as solicitor for the Tenth judicial circuit, wherein the real estate is situated. The bill describes the property; alleges that the lots and buildings were in the possession of said Dowda, that he claimed to own the same, and that they were being used for the unlawful manufacture of prohibited liquors; that a large still was located in the basement thereof; and that Dowda had knowledge that said still was located and being operated on said lot and in said structure. The demurrers raised the proposition discussed in the opinion.

Judge, Roe & Charlton, of Birmingham, for appellant. Section 12 of the act approved January 25, 1919 (Acts 1919, p. 12), is not germane to the title of the act. Section 45, Const. 1901; State v. Davis, 130 Ala. 148, 30 South. 344, 89 Am. St. Rep. 23; 75 Ala. 579. It deprives the tenant of the right of trial by jury. 153 N. Y. 188, 47 N. E. 302, 60 Am. St. Rep. 609; 27 Fed. Cas. 281; 16 Wall. 162, 21 L. Ed. 275; 6 Wall. 766, 18 L. Ed. 882; 24 Cyc. 108; section 11, Const. 1901. It violates section 19 of the Constitution. 78 Cal. 289, 20 Pac. 677, 12 Am. St. Rep. 54; 232 Ill. 37, 14 L. R. A. (N. S.) 356, 13 Ann. Cas. 129; 83 N. E. 542; 3 Ohio St. 475; 170 Pa. 203, 32 Atl. 637, 29 L. R. A. 145.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State. Section 12 of act above referred to does not violate the provisions of section 11 of the Constitution of Alabama, which provides that the right of trial by jury shall remain inviolate. 24 Cyc. pp. 108, 111, 112, 122; Const. of Ala. 1901, §§ 6, 11; State, etc., v. Buckley, 54 Ala. 620; M. & F. Ry. Co. v. McKenzie, 85 Ala. 546, 5 South. 322; Id., 96 Ala. 465, 11 South. 367; Taliaferro v. Lee, 97 Ala. 92, 13 South. 125; Cook v. N. Y., etc., Co., 100 Ala. 580, 13 South. 685; State v. Bley, 162 Ala. 239, 50 South. 263; Code 1907, § 7129.

Section 12 of said act does not violate section 19 of the Constitution of Alabama, which provides that "no conviction shall work * * * forfeiture of estate." Const. of Ala. 1901, § 19; Maples et al. v. State, ante,

p. 153, 82 South. 183; Mack v. Westbrook, 148 Ga. 690, 98 S. E. 339; 6 U. S. Comp. Statutes, 1918.

MAYFIELD, J. This is a suit in equity to abate a "liquor nuisance," by condemning and confiscating the premises—a house and lot in the city of Birmingham, Ala.—alleged to be used for the manufacture or distillation of intoxicating liquor.

Such a proceeding was sought to be authorized or provided for by an act of the Legislature of this state, approved January 25, 1919, commonly known as the Shaw Bill or the Bone-Dry law. The title of this bill is as follows:

"To further suppress the evils of intemperance; to restrict the receipt, possession and delivery of spirituous, vinous, malted, fermented or other intoxicating or prohibited liquors and beverages and fixing punishment and penalties."

Section 12 of the act provides that all appliances used for the purpose of distilling intoxicating liquors in violation of law are declared to be contraband, and that the owner of all illegal distilleries or plants for the making of prohibited liquors, and any person permitting the same to exist on his premises, shall forfeit to the state all property used in connection with such illegal plant, together with the buildings and lots, or parcels of ground constituting the premises on which the unlawful act is performed or permitted to be performed, and that a bill may be filed on the equity side of the circuit court of the county in which the property is located for the abatement of the nuisance.

The sufficiency of the bill was tested by demurrer. The trial court overruled the demurrer, and from that decree the defendant prosecutes this appeal.

The main grounds of demurrer argued on this appeal raise the questions as to the constitutionality of section 12 of the act, which attempts to authorize the proceeding to abate the nuisance by a condemnation and confiscation of the property.

[1] It is first insisted that section 12 of the act violates section 45 of the Constitution, in that it is not germane or properly referable to the title of the act. In other words, that the subject-matter of section 12 is not properly embraced within the title. A title, "To further suppress the evils of intemperance" will certainly warrant or authorize an enactment or a provision to abate liquor nuisances, and to destroy property used in creating or maintaining such nuisance, and such is the object and purport of section 12 of the act in question. Toole's Case, 170 Ala. 47, 54 South. 195; Fulton's Case, 171 Ala. 572, 54 South. 688; In re State ex rel. Atty. Gen., 179 Ala. 639, 60 South. 285.

[2] It is next insisted that section 12 of

the act violates the provisions of our state Constitution, which guarantees to the citizens the inalienable right of trial by jury, and which guarantees that the right shall remain inviolable. The answer to this contention is that the proceeding to abate a nuisance or to condemn and confiscate property which is being used to create or maintain such nuisance, and in violation of law, is not a proceeding in which the right of jury trial existed at common law, or by statute when the Constitution was adopted, and it is therefore not within the protection of these constitutional provisions. The proceeding provided for in section 12 of the act is in the nature of a civil libel in rem, and not against the person. U. S. v. La Vengeance, 3 Dall. 297, 1 L. Ed. 610; Barnacoat v. Six Casks of Gunpowder, 1 Metc. (Mass.) 230. These constitutional provisions as to jury trials do not extend to all trials or judicial proceedings, but only to those, or similar kinds, which existed when the Constitution was adopted. If a jury trial was not authorized or required in a particular kind of judicial proceeding when the Constitution was adopted, then it did not exist or was not required by these provisions of the Constitution relating to jury trials. They did not confer or create the right of trial by jury, but they did perpetuate the right which existed when the Constitution was adopted. Hathorne v. Panama Park Co., 44 Fla. 194, 32 South. 812, 103 Am. St. Rep. 138.

The right of jury trial did not extend to equity cases as a matter of right when our Constitution was adopted, nor to proceedings like the one in question, provided for in section 12 of this act; hence it does not violate these provisions of our Constitution in its failure to provide for a jury trial.

[3] The section of the statute in question does not violate the state or federal constitutional provisions as to "due process of law" or equal protection of the law. It provides for notice to the owner or claimant of the property or premises sought to be condemned or confiscated, and affords an opportunity to be heard. It further provides for a judicial determination of all questions necessary to show a forfeiture of the rights to the property in consequence of its being used in violation of law, so as to constitute it a nuisance or contraband. Such notice, hearing, and judicial proceeding being provided for in a court of equity, and which is properly an equitable proceeding, there is no violation of any of these constitutional provisions as to "due process of law" or equal protection of the law. If a jury trial is ever awarded in such or similar proceedings, it is in such cases a matter of legislative force, and not of constitutional right.

All questions as to how the property in question is kept or used so as to constitute a liquor nuisance should be tried in a proceeding in rem, whether or not the owner has been criminally proceeded against. Similar proceedings are provided by federal statutes and enforced by the federal courts as to forfeitures of goods for nonpayments of revenues, or customs, due thereon. Origet v. U. S., 125 U. S. 240, 8 Sup. Ct. 846, 31 L. Ed. 743.

Statutes like the one in question must, of course, conform to constitutional provisions intended to secure to the owner of property due process of law. Similar statutes have been declared unconstitutional because they denied to the owner of the property the right to be heard or to show that his property was not so used as a nuisance as to become contraband. See Hibbard v. People, 4 Mich. 125; Fisher v. McGirr et al., 1 Gray (Mass.) 1, 61 Am. Dec. 381; Jones v. Root, 6 Gray (Mass.) 435. The Supreme Court of the United States has thus stated limitations upon such statutes:

"There are, of necessity, limits beyond which legislation cannot rightfully go. * * * If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

The act in question, however, seems not to be invalidated by the defects pointed out in any of those cases, and certainly not by any pointed out by the demurrers to this bill, which, of course, are the only ones we are now considering or passing upon.

The extent or quantity of premises or land which may be declared to be a nuisance and abated, forfeited, and confiscated, under this statute, when a part only is being used in violation of the law, is not now before us. Some other questions as to the validity of the statute and proceedings are argued, but they are not now properly before us for decision.

[4] What was said by this court in construing the Fuller and Carmichael Bills which contained somewhat similar provisions as are found in this (the Shaw Bill) are apt so far as any question of law is now raised by the demurrers to this bill. It was held that Acts 1909 (Sp. Sess.) p. 8, and Acts 1909 (Sp. Sess.) p. 63, known as the Carmichael and Fuller Acts, respectively, are not unconstitutional as depriving the owner of his property without due process of law, since his right to trial of the issues in equity is a sufficient compliance with the constitutional mandate. The Legislature has power to regulate or to absolutely prohibit the manufacture, sale, or other disposition of intoxicating liquors within the state, and may declare a place kept or maintained for such purpose to be a common nuisance. These acts

are not invalid as depriving a citizen of a right to trial by jury, nor as a legislative attempt to enforce a criminal law by civil actions. The state's police power extends to searches and seizures and to a destruction of property which is the subject of a crime or the means of perpetrating it; hence the Fuller and Carmichael Acts are not unconstitutional as in effect authorizing a taking of private property for public use without compensation, as such constitutional provision does not prevent proper provisions for the forfeiture and confiscation of property used to commit crime. Fulton v. State, 171 Ala. 573, 54 South. 688.

It results that there was no error in overruling the demurrer to the bill, and the decree appealed from is in all things affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.